CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

MAR 30 2016

JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| **LOUIS EDWARD BROWN** | ) | Criminal Action No. 7:12CR00073-3 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| **UNITED STATES OF AMERICA** | ) | By: Michael F. Urbanski |
| Defendant. | ) | United States District Judge |

Louis Edward Brown, a federal inmate proceeding pro se, has filed a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.[1] He alleges counsel provided ineffective assistance by failing (1) to review important information with him or visit him during the pendency of his case, (2) to object to the PSR on multiple grounds; (3) to request that a sentence received in state court be served concurrent to his federal sentence; and (4) to note an appeal when asked. In addition, he argues that he was subjected to prosecutorial misconduct. By order entered January 7, 2016, the court found that it was unable to resolve the issue of whether counsel was ineffective for failing to file an appeal on the existing record and, therefore, ordered an evidentiary hearing. Following that hearing, and after reviewing the record and briefs from Brown and the government, the court concludes that Brown has not stated any meritorious claim for relief under § 2255 and that the government's motion to dismiss must be granted.

I.

On March 21, 2013, a federal grand jury sitting in Roanoke, Virginia, charged Brown and multiple codefendants with conspiring to distribute and possess with intent to distribute 1,000 grams or more of a mixture or substance containing heroin, in violation of 21 U.S.C. § 846. The indictment stemmed from an investigation of a heroin trafficking conspiracy by the Roanoke

---

[1] Brown was sentenced by United States District Judge James C. Turk. Judge Turk is deceased and the motion has been assigned to the undersigned United States District Judge.

City Drug Task Force and the Bureau of Alcohol, Tobacco, Firearms and Explosives. PSR ¶ 18, ECF No. 792. On November 30, 2012, agents attempted a controlled purchase of heroin from Brown through a confidential informant ("CI"). Id. The CI paid the money to Brown but never received the drugs. As Brown drove away, the agents called the Radford Police Department and he was arrested and charged in state court with possession with intent to distribute marijuana. Id. at ¶ 20. Brown was ultimately sentenced to one year and one month on that state charge. Id.

Following Brown's current federal indictment, he received court-appointed counsel. Counsel met with him numerous times, including between three to nine times before Brown pleaded guilty, to discuss the indictment and the charges against him. Counsel also sent multiple letters to Brown. Counsel informed Brown that the government intended to file an enhancement pursuant to 21 U.S.C. § 841 because of his prior convictions for felony drug offenses, which could result in a mandatory life sentence. Ex. 1 § 2255 Mot. 2, ECF No. 279-2. Counsel's advice to Brown was to plead guilty to avoid a potential life sentence. Id. Counsel also facilitated a proffer, in which Brown talked with an investigator and prosecutor, in the hopes of receiving a reduced sentence for substantial assistance.

On December 18, 2013, Brown pleaded guilty to conspiracy to distribute a measurable quantity of heroin, a lesser included offense of the charged crime, pursuant to a written plea agreement. At the guilty plea hearing, Brown affirmed that he was "totally satisfied with the legal services [his] attorney ha[d] rendered." Plea Hr'g Tr. 8, ECF No. 285. The court explained the elements of the charged offense and what the government would have to prove for a jury to find Brown guilty. Id. at 7-8. Brown affirmed that he understood. Id. at 8. The court advised Brown that he faced a maximum statutory penalty of up to twenty years' imprisonment. Id. at 13-14. The court also noted that Brown was going to be classified as a career offender, which

2

affected his guidelines range. Id. at 20. Brown affirmed his understanding that by pleading guilty, he gave up his right to appeal and to collaterally attack his sentence except on matters that cannot be waived under the law or that allege ineffective assistance of counsel. Id. at 21. Brown affirmed that no one had made any promises to him other than those contained in the Plea Agreement to cause him to plead guilty and that no one had pressured him to plead guilty. Id. at 8. The court found that Brown was fully competent and capable of entering an informed plea and that his guilty plea was knowingly and voluntarily made. Id. at 17.

The probation office prepared a Presentence Investigation Report ("PSR") in anticipation of sentencing. The PSR recommended a base offense level of 32 because Brown qualified as a career offender under USSG § 4B1.1. PSR ¶ 39, ECF No. 796. Without the career offender designation, Brown's base offense level would have been 28, which included a two-level enhancement for possession of a firearm. Id. ¶¶ 34, 38. The PSR listed four prior felony convictions to support the career offender enhancement: (1) a 1996 conviction for distribution of a controlled substance; (2) a 2001 conviction for possession with intent to distribute marijuana; (3) a 2008 conviction for possession with intent to distribute cocaine; and (4) the 2014 conviction for possession with intent to distribute marijuana. Because he pleaded guilty, Brown received a three-point reduction to his base offense level for a total offense level of 29, a criminal history category of VI, resulting in a guideline imprisonment range of 151 to 188 months. Id. ¶ 114.

Counsel met with Brown on two occasions following the preparation of the PSR. The first meeting was short because Brown was irritated and unhappy with counsel's representation. The second meeting was longer and the two discussed the PSR. Sent. Hr'g Tr. 6, ECF No. 276. The court held a sentencing hearing on May 23, 2014. Brown asked the court for new

3

representation because he said his counsel was not representing his interests. Id. at 3-5. This request was denied and Brown was sentenced to 151 months. Id. at 16. He did not appeal.

Following the filing of his current § 2255 motion, the court held an evidentiary hearing on March 15, 2016. At the hearing, Brown testified. He stated that he was unhappy with the representation he had received from counsel. He felt that counsel did not adequately explain the charges and penalties he faced and that he was disheartened because counsel told him that he could likely face a life sentence if he did not plead guilty. Brown testified that he asked counsel to file an appeal in the courtroom following sentencing. Brown added, however, that he might have asked counsel to file an appeal while counsel was talking or very quietly such that counsel may not have heard him. Brown also stated that he had his mother and a friend call counsel after sentencing, but both those witnesses testified at the hearing that they never spoke to counsel and left messages for counsel to call Brown. Neither left a message indicating that Brown wanted to appeal. Brown testified that he wanted counsel to object to the gun enhancement and his career offender status at sentencing and to argue that his state and federal sentences should run concurrently.

Counsel also testified at the evidentiary hearing. Counsel stated that he believed the plea agreement to be very beneficial for Brown. He testified that he made a tactical decision, which he discussed with Brown, not to challenge the gun or career offender enhancements because he believed that they applied. In addition, he said that although he did not remember whether he had considered making an argument to the court requesting that Brown's federal and state sentences run concurrently, he did not want to do anything to jeopardize the plea deal. Counsel testified that Brown never asked him to file an appeal, that no one ever requested that he file an appeal on Brown's behalf, and that he had no reason to believe that Brown would want to file an

4

appeal. Nonetheless, counsel sent a letter to Brown following sentencing explaining that Brown had 14 days in which to note an appeal and that Brown should contact either him or the court immediately if he wished to file an appeal. Ex. 1 Gov't Response 3, ECF No. 287-1. Counsel stated that at no time during that 14 day window, or after, did Brown request that he note an appeal.

## II.

To state a viable claim for relief under § 2255, a petitioner must prove: (1) that his sentence was "imposed in violation of the Constitution or laws of the United States;" (2) that "the court was without jurisdiction to impose such a sentence;" or (3) that "the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). Brown bears the burden of proving grounds for a collateral attack by a preponderance of the evidence. Jacobs v. United States, 350 F.2d 571, 574 (4th Cir. 1965).

### A. INNEFECTIVE ASSISTANCE OF COUNSEL

Criminal defendants have a Sixth Amendment right to "reasonably effective" legal assistance. Strickland v. Washington, 466 U.S. 668, 687 (1984). In order to establish that his counsel's assistance was not reasonably effective, a defendant must satisfy a two-prong analysis: he must show both that counsel's performance fell below an objective standard of reasonableness and that he was prejudiced by counsel's alleged deficient performance. Strickland, 466 U.S. at 669. When considering the reasonableness prong of Strickland, courts apply a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689; see also Gray v. Branker, 529 F.3d 220, 228-29 (4th Cir. 2008). Counsel's performance is judged "on the facts of the particular case," and assessed "from counsel's perspective at the time." Id.

5

To satisfy the prejudice prong of Strickland, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional error, the outcome of the proceeding would have been different. Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.

### 1. Claim for Failure to Explain Charges and Punishment

Brown's claims of ineffective assistance of counsel do not satisfy Strickland's stringent requirements. Brown first claims that his counsel provided deficient representation because counsel failed to review the elements of the offense for which he was charged and the possible penalties that he might face. This claim is directly contracted by the plea colloquy, in which Brown stated that he was satisfied with his representation, that he understood the charges against him, and that he understood the maximum sentence he faced. Plea Hr'g Tr. 8, 13-14, ECF No. 285. The court also explained what the government would have to prove in order for Brown to be found guilty at trial, to which Brown affirmed his understanding. Id. at 8. A defendant's allegations that contradict statements he made during a plea colloquy cannot support a finding of error. See United States v. Lemaster, 403 F.3d 216, 221 (4th Cir. 2005) (holding that absent extraordinary circumstances, "allegations in a § 2255 motion that directly contradict the petitioner's sworn statements during a properly conducted Rule 11 colloquy are always palpably incredible and patently frivolous or false"). Accordingly, this claim lacks merit and does not support a finding of ineffective assistance of counsel. Strickland, 466 U.S. at 687.

### 2. Claim for Failure to Review PSR and make Objections

Next, Brown argues that counsel never reviewed the PSR with him and failed to make objections at sentencing. It is clear from Brown's own testimony at the sentencing hearing that counsel met with him on two occasions before sentencing. Sent Hr'g Tr. 6, ECF No. 276. In

6

addition, at the evidentiary hearing, counsel testified that he met with Brown regarding the PSR and Brown stated that the PSR was correct but that he wanted to fire counsel because he was unhappy with counsel's representation. At the evidentiary hearing, Brown never contradicted counsel's testimony but suggested that when reviewing the PSR with counsel he was so unhappy with the representation that he did not actively participate in the meeting. Because Brown admitted at his sentencing and evidentiary hearings that counsel met with him twice before sentencing to review the PSR, he cannot establish that counsel's conduct fell below an objective standard of reasonableness. Strickland, 466 U.S. 688.

Brown also claims that he received ineffective assistance because counsel never objected to the two-point gun enhancement in the PSR. Counsel stated that he discussed the gun enhancement with Brown, but concluded that they should not object to it because there was evidence from witnesses that Brown had carried a gun. In any event, the two-point gun enhancement did not affect Brown's guidelines range because Brown's offense level was based on the career offender guideline. As such, Brown's base offense level was set at 32, pursuant to USSG § 4B1.1, and was not impacted by the gun enhancement. Counsel's decision not to object to the gun enhancement appears to have been sound strategy. See Yarborough v. Gentry, 540 U.S. 1, 5-6 (2003) (noting that "counsel has a wide latitude in deciding how best to represent a client").

Next, Brown argues that counsel should have objected to his status as a career offender. He claims that the designation should not have applied to him. At the evidentiary hearing, counsel testified that he did not object to Brown's status as a career offender because he thought the enhancement applied under the applicable guideline and he did not want to do anything to put Brown's plea agreement at risk. This decision was also tactical. Yarborough, 540 U.S. at 8.

7

Brown has an extensive criminal history and multiple prior convictions that support the career offender enhancement. In order to qualify as a career offender, he must have had at least two prior convictions for a controlled substance offense.[2] The guideline defines a "controlled substance offense" as an offense involving a controlled substance that is punishable by more than a year in prison. USSG § 4B1.2(b). Brown's argument appears to be that only one of his prior convictions satisfies that criteria. In fact, Brown has four prior convictions for drug offenses that were punishable by more than a year.[3] Accordingly, the court properly sentenced Brown as a career offender. Therefore, Brown cannot establish that counsel acted unreasonably in failing to object to the career offender enhancement or that he suffered prejudice from his counsel's action. Strickland, 466 U.S. at 687.

---

[2] The text of the applicable sentencing guideline provides:

> (a) A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

USSG § 4B1.1(a). Brown argues that the guideline does not apply to him only with regard to the third element—his prior criminal history.

[3] Brown was convicted of the following crimes:

(1) A 1996 conviction for distribution and possession with intent to distribute a controlled substance, in violation of Virginia Code § 18.2-248. The statutory sentence for such a conviction is not less than five nor more than forty years. Va. Code § 18.2-248(c);
(2) A 2001 conviction for possession with intent to distribute marijuana, in violation of Virginia Code § 18.2-248.1(a)(2). This constitutes a Class 5 felony, which is punishable by not less than one year and not more than ten years in prison. Va. Code § 18.2-10(e);
(3) A 2008 conviction for possession with intent to distribute cocaine, in violation of § 18.2-248. The statutory sentence for such a conviction is not less than five nor more than forty years. Va. Code § 18.2-248(c); and
(4) A 2014 conviction for possession with intent to distribute marijuana, in violation of in violation of Virginia Code § 18.2-248.1(a)(2). This constitutes a Class 5 felony, which is punishable by not less than one year and not more than ten years in prison. Va. Code § 18.2-10(e).

8

Case 7:12-cr-00073-MFU-RSB   Document 323   Filed 03/30/16   Page 8 of 15   Pageid#: 1953

### 3. Claim for Failure to Request Concurrent Sentences

Next, Brown argues that he received ineffective assistance because counsel did not request at his federal sentencing hearing that his 2014 state sentence for possession with intent to distribute marijuana run concurrent rather than consecutive to any federal sentence imposed. The sentencing guidelines allow for a reduced sentence if "a term of imprisonment resulted from another offense that is relevant conduct to the instant offense of conviction" and "was the basis for an increase in the offense level for the instant offense." USSG § 5G1.3(b). By the plain terms of the guideline, if the offense conduct related to the state charge did not cause an increase in the defendant's offense level, no adjustment of the federal sentence under § 5G1.3 is warranted. See, e.g., United States v. Connor, 273 F. App'x 245, 247 (4th Cir. 2008) (unpublished) (finding that counsel did not provide ineffective assistance for failing to move for downward departure under § 5G1.3 because state offense conduct did not increase federal offense level).

Brown cannot demonstrate that the state offense conduct increased his offense level. The court calculated Brown's base offense level under the career offender guideline, based on his prior convictions. The 2014 state conviction was one of four prior convictions used to support Brown's career offender status. However, because the career offender designation applies if a defendant has only two prior felony drug convictions, he still would have qualified as a career offender even without the 2014 state conviction. Therefore, the state offense conduct did not have any effect on this calculation and § 5G1.3 is inapplicable.

A court may also impose concurrent sentences pursuant to federal statute. Under 18 U.S.C. § 3584(a), "[m]ultiple terms of imprisonment imposed at different times are to run consecutively <u>unless</u> the court orders that the terms are to run concurrently." 18 U.S.C.

9

§ 3584(a) (emphasis added). Section 3584 also provides that, in determining whether such terms are to run concurrently or consecutively, the court "shall consider, as to each offense for which a term of imprisonment is being imposed, the factors set forth in section 3553(a)." Id. § 3584(b). The factors to be considered under § 3553(a) include, but are not limited to: (1) the nature and the circumstances of the offense and the history and characteristics of the defendant; (2) the need to impose the sentence to reflect the seriousness of the offense; (3) the need to promote respect for the law; (4) providing just punishment for the offense; (5) affording adequate deterrence to criminal conduct; and (6) protecting the public from further crimes of the defendant. 18 U.S.C. § 3553(a)(1)-(2).

Even assuming that counsel failed to investigate the concurrent-sentence issue or raise it before the court at sentencing and that such a failure constituted deficient performance, Brown cannot establish prejudice. He assumes that the court would have granted his request for concurrent sentences, but such speculation is not sufficient to prove a reasonable probability of a different result. This is especially true in light of the prosecutor's argument, at the evidentiary hearing, that he would have opposed any such request. Additionally, an objective analysis based on the factors listed in § 3553(a) supports the imposition of consecutive sentences. First, the offense conduct is sufficiently different; Brown was charged in state court was possession with intent to distribute marijuana. By contrast, he pleaded guilty in federal court to conspiracy to distribute heroin. In addition, Brown has an extensive criminal history, which the court noted at his sentencing, "See, you've just been in criminal activity all your life." Sent. Hr'g Tr. at 13, ECF No. 276. Therefore, it is unlikely that the court would have ordered concurrent sentences even if counsel had asked for them. See, e.g., United States v. Alvarez, 184 F. App'x 876, 881 (11th Cir. 2006) (concluding that a defendant had failed to establish prejudice under Strickland

because he could not establish a reasonable probability that the sentencing court would have ordered concurrent sentences if counsel had made an explicit request). Therefore, Brown cannot satisfy the prejudice prong of Strickland. 466 U.S. 694.

### 4. Claim for Failure to Note an Appeal

Finally, Brown argues that his counsel provided ineffective assistance of counsel because he failed to notice an appeal after being directed to do so. It is well established that "a lawyer who disregards specific instructions from a defendant to file a notice of appeal acts in a manner that is professionally unreasonable." Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000). "[A]n attorney renders constitutionally ineffective assistance of counsel if he fails to follow his client's unequivocal instruction to file a notice of appeal . . . ." United States v. Poindexter, 492 F.3d 263, 273 (4th Cir. 2007).

Brown argues that directly after he was sentenced, he leaned over to counsel and requested that counsel file an appeal. However, he testified at the evidentiary hearing that he might have asked counsel to appeal while counsel was talking and twice stated that he might have spoken so softly that counsel could not hear him. Moreover, Brown's friend and mother, both of whom testified that they called counsel following the sentencing, also testified that they never talked directly to counsel and also never relayed in their messages that they were calling because Brown wanted to appeal. Counsel testified that he never heard Brown ask for an appeal at the sentencing hearing or any time thereafter and was never asked to file an appeal by anyone else on Brown's behalf.

The court does not find Brown's assertion that he unequivocally instructed his counsel to file an appeal to be supported by the evidence. At best, Brown's testimony was that he mentioned to counsel that he wanted to appeal, but may have done it while counsel was speaking

11

or otherwise so softly that counsel did not hear him. Under these circumstances, Brown has not established that he unequivocally instructed his attorney to file an appeal. See Parsons v. United States, 505 F.3d 797, 798 (8th Cir. 2007) (concluding that the defendant failed to establish an ineffective assistance claim when he whispered to his counsel that he wanted to file an appeal, but his lawyer did not hear it). Moreover, even after counsel wrote Brown, reminding him of his right to timely appeal, Brown did not communicate his interest in an appeal to his counsel.

Even if a defendant fails to clearly instruct counsel to note an appeal, however, counsel must still consult with a defendant about appellate rights when either (1) any rational defendant would want to appeal (for example, where there is a non-frivolous ground for appeal), or (2) this particular defendant reasonably demonstrated to counsel that he was interested in appealing. Flores-Ortega, 528 U.S. 470, 480 (2000). Consulting entails "advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." Id.

In this case, defense counsel admitted that following sentencing and entry of judgment he never had a face-to-face discussion with Brown about whether Brown wanted to file a notice of appeal. However, counsel did send a letter to Brown letting him know that he had 14 days in which to appeal and telling Brown to contact either counsel or the court if he wished to note an appeal. Ex. 1 Gov't Response 3, ECF No. 287-1. Brown claims that he never received that letter. Even if Brown never received the correspondence, counsel had an obligation to discuss the right to appeal with Brown only if a rational defendant would want to appeal or Brown demonstrated an interest in appealing. Flores-Ortega, 528 U.S. at 480. Neither circumstance applies in this case.

12

Brown did not clearly express to counsel an interest in appealing. Moreover, a rational defendant would not want to appeal, as there does not appear to be any meritorious grounds for an appeal. By pleading guilty, Brown waived his right to appeal. Accordingly, noting an appeal would have been a breach of the plea agreement, and the government could have sought a number of remedies including declaring the plea agreement void and filing new charges. Plea Agreement 9, ECF No. 156. Moreover, Brown was sentenced to the low end of the guideline range for the lesser included offense to which he pleaded guilty. Although Brown testified at the evidentiary hearing that he felt that his sentence was unfair, it was, in fact, a much shorter sentence than he would have faced had he gone to trial and been convicted. Therefore, he received the benefit of the plea agreement for which he bargained with the government. See United States v. Cooper, 617 F.3d 307, 314 (4th Cir. 2010) (concluding that where a defendant receives the sentence bargained for with the government, there are no nonfrivolous grounds for appeal, and the defendant has not expressed an interest in appealing, counsel was not under an obligation to discuss with the defendant a right to appeal). Accordingly, Brown has not established that counsel provided ineffective assistance either for failing to note an appeal or for failing to consult with him about his appellate rights. Flores-Ortega, 528 U.S. at 479.

### B. PROSECUTORIAL MISCONDUCT

Finally, Brown argues that the prosecution "used coercive tactics of a life sentence to get [him] to either turn informant or accept a plea agreement, or both." § 2255 motion 8, ECF No. 279. The reality is that Brown was facing the possibility of a life sentence, and his counsel aptly apprised him of that fact. A conviction for the originally charged offense of conspiracy to distribute 1000 grams or more of heroin coupled with at least two prior felony drug convictions would have resulted in a "mandatory term of life imprisonment without release." 21 U.S.C. §

13

841(b)(1)(A). Moreover, Brown's claim that he was coerced is directly contradicted by his affirmations under oath during the Rule 11 colloquy that no one had threatened him or attempted to force him to plead guilty. Plea Hr'g Tr. 8, ECF No. 285. Absent clear and convincing evidence to the contrary, defendants are bound by their representations at a guilty plea colloquy. See Beck v. Angelone, 261 F.3d 377, 396 (4th Cir. 2001); Lemaster, 403 F.3d at 221. Therefore, Brown's claim is unavailing.

Brown relies on a memorandum issued by former Attorney General Holder that advised prosecutors not to seek an enhanced sentence under 21 U.S.C. § 851 for a defendant based on prior felony convictions in order to facilitate a guilty plea but rather only when severe sanctions are appropriate. See Memorandum from Att'y Gen. Eric Holder, to Dept. of Justice Att'ys re: Guidance Regarding § 851 Enhancements in Plea Negotiations (Sept. 24, 2014)(available at https://www.fd.org/docs/select-topics/sentencing-resources/memorandum-to-all-federal-prosecutors-from-eric-h-holder-jr-attorney-general-on-851-enhancements-in-plea-negotiations .pdf? sfvrsn=6). It is within the province of the United States Attorneys' Office to determine whether to seek an enhancement under § 851. Given Brown's extensive criminal history, such a request would not have been unreasonable. Moreover, as then-Attorney General Holder made clear, policy memoranda are "not intended to create or confer any rights, privileges, or benefits in any matter, case or proceeding. See United States v. Caceres, 440 U.S. 741 (1979)." Memorandum from Atty'y Gen. Eric Holder to U.S. Attorneys, Department Policy on Changing Mandatory Minimum Sentences and Recidivist Enhancements in Certain Drug Cases (Aug. 12, 2013)(available at https://www.justice.gov/sites/default/files/oip/legacy/2014/07/23/ag -memo-department-policypon-charging-mandatory-minimum-sentences-recidivist-enhancements -in-certain-drugcases.pdf). Accordingly, Brown's claim for prosecutorial coercion is meritless.

14

## III.

For the reasons stated herein, the court will grant the government's motion to dismiss. An appropriate order will be entered this day. Because Brown has failed to make a substantial showing of the denial of a constitutional right as required by 28 U.S.C. § 2253(c), a certificate of appealability will be denied.

ENTER: This 30th day of March, 2016.

/s/ Michael F. Urbanski
United States District Judge

15